John W. Sweeny, J.
This is an article 78 proceeding in which petitioner contests his dismissal from the Newburgh City Police Department following an administrative hearing concerning two separate sets of charges of alleged misconduct.
On April 25, 1975 petitioner was suspended pursuant to section 75 of the Civil Service Law, based on a number of very indefinite charges which were related to the 1970-1972 New-burgh Police Department scandals. While he was still on suspension and awaiting a departmental hearing on these charges, petitioner was called before one of the deputy commissioners to answer questions with respect to an alleged internal investigation being conducted by the Newburgh Police Department.
When he arrived before Deputy Commissioner Wohlrab late in the afternoon of May 14, 1975, he was given his Miranda rights, including his right to obtain legal counsel. While the record is somewhat unclear, there seems little question that petitioner did indicate his desire to contact his attorney, who he knew was on trial in Westchester County. However, the interrogation of petitioner regarding these incidents proceeded immediately, without petitioner being given an opportunity to consult with counsel. Petitioner was then advised that he was being given immunity from criminal prosecution regarding the subject matter of the questions to be asked, that if he refused to answer he would be immediately suspended and subject to disciplinary proceedings, and that if he did answer, any information obtained could be used against him at a departmental disciplinary proceeding. Petitioner’s continued refusal to respond to any questions resulted in a second suspension on that date and the filing of a second set of charges against petitioner based on his refusal to answer the questions of the deputy commissioner.
Both sets of charges were consolidated for the purposes of an administrative hearing at which it was at times difficult to determine who was on trial.
Apparently the one crucial witness who was willing to substantiate the initial set of charges against petitioner regarding his alleged involvement with the Newburgh Police Department scandals disappeared from Newburgh just before the hearing. Therefore, since the respondents were unable to establish a case regarding these charges, the hearing officer *810 rightfully found that they should be dismissed. However, since there was no question that petitioner refused to respond to respondent’s inquiry on May 14, 1975, the hearing officer sustained the second set of charges and, as punishment, ordered the petitioner dismissed from the Newburgh Police Department.
Since the charges upon which the April 25, 1975 suspension were based were dismissed, the petitioner is entitled to recoupment of the salary which was withheld from that date until May 14, 1975, the date of his second suspension (Civil Service Law, § 75, subd 3) less any compensation from outside employment received for that period.
Petitioner initially questions the authority of the respondents, or any municipality for that matter, to cause overlapping suspensions of an employee based, essentially, on the same underlying incidents.
As a general rule, the courts have not found any difficulty accepting a suspension upon a suspension in those cases where a public employee, particularly a police officer, has refused to give information as to a matter concerning which his employer is entitled to inquire (cf. Hank v Codd and cases cited, SDNY 75 Civ 1726). Since the second suspension of petitioner was caused by just such an insubordination of a public employee, this first argument of petitioner is rejected by this court.
The only other argument of any consequence offered by petitioner concerns itself with the allegation that he was denied his right to counsel before the May 14, 1975 interrogation and, therefore, denied due process of the law.
Although the hearing officer concluded that petitioner was given the opportunity to seek the advice of counsel, the record indicates that petitioner expressed a desire to talk with his attorney, who he knew was engaged at that precise moment, but that the respondents rushed into their interrogation without giving petitioner a reasonable opportunity to consult with his attorney.
It should be mentioned that there is no evidence in the record which would even suggest that there was a compelling reason to force petitioner into jeopardy on the date in question. The subject matter of the investigation was of some four to five years’ vintage and, as the record indicates, was the subject of discussions with a prior District Attorney of Orange County well before petitioner’s initial suspension.
*811 The end result of respondents’ interrogation was to force petitioner to make crucial decisions regarding his legal rights. Of necessity, he had to consider whether or not the respondents actually had the authority to offer him immunity from criminal prosecution and, if they did, what the legal consequences of any continued refusal to answer would be if the respondents did have such authority. It is, therefore, evident that petitioner, without being given prior notice, was drawn into a situation on May 14, 1975 where he had to make a legally significant choice whether or not to answer the investigator’s questions. Assuming, for the sake of argument, that he had been guilty of committing serious criminal acts and that the respondents did not have the authority to grant him immunity, he would have unwittingly incriminated himself. If the petitioner’s prior acts were essentially only minor transgressions of police regulations, his refusal to answer without the prior advice of counsel would have subjected him to outright dismissal for insubordination (cf. Hank, supra).
While petitioner was entitled by statute (Civil Service Law, § 75) to counsel at the hearing now under review, as a general rule he possessed no constitutional right to legal representation at a purely investigatory proceeding (Matter of Groban, 352 US 330). However, the Court of Appeals in People v Ianniello (21 NY2d 418, 424-425) recognized that even though there was no right to representation of counsel at an investigation, a person is entitled to the advice of his lawyer concerning his legal rights (as opposed to mere strategic advice).
While People v Ianniello (supra) was concerned with the rights of a witness before a Grand Jury, this court does not believe that the Ianniello court was limiting itself to just Grand Jury investigations when it declared that, "As a matter of fairness, government ought not compel individuals to make binding decisions concerning their legal rights in the enforced absence of counsel” (p 424).
This court believes that this principle should be made applicable to administrative investigations (cf. Matter of Leopold v Tofany, 68 Misc 2d 3, 5) when a person’s very livelihood may depend upon the correctness of a spontaneous decision. It is particularly applicable when a person is required to make decisions requiring knowledge of erudite points of law. Unlike the situations presented in Matter of Finocchairo v Kelly (11 NY2d 58) and Matter of Story v Hults (27 AD2d 745, affd 19 NY2d 936) there was absolutely no reason why the respon *812 dents had to rush their investigation (unless it was to insure that petitioner would not become aware of the legal implications of the choices with which he was faced).
Public employees may not be discharged from employment without due process of law (Slochower v Board of Educ., 350 US 551). What constitutes the elusive concept of due process depends upon the nature of the proceeding involved, the rights, governmental and private, that may possibly be affected by those proceedings and the possible burden on that proceeding (Hannah v Larche, 363 US 420, 422).
The May 14, 1975 interrogation was clearly related to the prior decision of the District Attorney’s office not to prosecute petitioner and the decision reached at that time to have respondents handle the matter administratively. The one sure object of the interrogation was to cause petitioner’s removal from the police force if the charges of his involvement with the 1970-1972 corruption scandals could be established through the petitioner’s own testimony exacted after the initial vague charges of misconduct were filed against him. Therefore, this interrogation did not involve a situation where injury to petitioner was only a collateral consequence of the actions of the investigative body (cf. Jenkins v McKeithen, 395 US 411, 424; also, Hannah v Larche, supra, p 443). Rather, the very purpose of the interrogation was to obtain evidence to bolster the pending charges against petitioner, or if he refused to answer, to bring new charges based on insubordination. In either case, the nature of the investigation was apparently to effect the dismissal of the petitioner.
It is self-evident from the record that it would not have burdened this investigation, commenced without notice late one afternoon, to permit petitioner a reasonable time to seek the advice of counsel before a rush was made to ensnare him in the complexities of the law.
Given all these factors, this court believes that the petitioner was deprived of due process of law when he was effectively denied his right to the advice of counsel before the May 15, 1975 investigation. It may not be assumed that petitioner had no legitimate reason for refusing to answer the questions of the investigator (cf. Matter of Conlon v Murphy, 24 AD2d 737). It would be bitingly ironic if, in an analogous situation, accused police officers, regardless of their guilt or innocence, are denied the right to consult with counsel when *813 accused criminals have such right (Escobedo v Illinois, 378 US 478, 486).
Therefore, it is the opinion of this court that the invalidity of the interrogation, which was the basis of petitioner’s dismissal, has tainted and must render invalid the decision reached at the subsequent administrative hearing. Accordingly, the decision of the respondent dated April 2, 1976 is hereby reversed and respondents are directed to reinstate petitioner in accordance with subdivision 3 of section 75 of the Civil Service Law, without prejudice to whatever rights respondents may have to take additional action.